***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip A. Baddour III and the briefs and arguments on appeal. The Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing on July 15, 2004 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The defendant is a duly qualified self-insured, with Specialty Risk Services as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. For I.C. No. 030435, plaintiff's average weekly wage is $898.00, yielding a maximum compensation rate of $560.00 for the year of 1999.
5. For I.C. No. 254949, plaintiff's average weekly wage is $960.00, yielding a maximum compensation rate of $620.00 for the year 2001.
 ***********
Based upon the competent evidence of record, the undersigned makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-nine years old.
2. Plaintiff was employed by Dana Corporation in the Technical Support Department in December of 1999.
3. On December 16, 1999, plaintiff sustained an injury by accident to his right shoulder when he slipped while getting out of a truck. Defendant accepted this right shoulder claim (I.C. File No. 030435) as compensable.
4. As a result of the December 16, 1999 compensable injury by accident, plaintiff was found to be at MMI and assigned a forty-six percent (46%) permanent partial impairment rating to his right shoulder on October 24, 2000. Pursuant to this rating, plaintiff was entitled to payments of $560 per week for 110.4 weeks beginning October 24, 2000 and ending on or about December 2002. The compensation totaled $61,824.
5. Almost one year later, on September 17, 2001, the parties entered into a Form 21 Agreement regarding payment of plaintiff's rating. The agreement provided that plaintiff would receive $10,000 upon signing the agreement, with the remainder of the benefits being paid over a period of six years through an annuity, with the last payment being made on September 15, 2007.
6. At the time of the agreement, plaintiff was not represented by counsel. The servicing agent's adjuster did not provide plaintiff with the option of receiving his permanent partial disability benefits over 110.4 weeks beginning October 24, 2000, with the last payment being on or about December 2002. At the time plaintiff signed the Form 21 Agreement, approximately $30,000 in permanent partial disability benefits had accrued, and an additional approximately $32,000 was owing over the next approximately one year and three months.
7. The Commission received the Form 21 Agreement on October 23, 2001 and approved it on October 24, 2001.
8. On December 19, 2000, plaintiff was seen at the Iredell Memorial Hospital emergency room for low back pain. Plaintiff requested to be treated by Dr. James W. Serene, the orthopedic surgeon who had previously treated plaintiff for his right shoulder injury. Plaintiff reported to Dr. Serene that his back pain had become progressively worse over the past week and that the pain was secondary to the December 1999 work-related accident. Based upon X-rays and examination of plaintiff, Dr. Serene's impression was mild arthritis of the back.
9. Plaintiff testified that on October 22, 2001, he was pushing a heavy crate at work when he felt pain in his low back and into his buttocks.
10. On November 19, 2001, plaintiff saw Dr. Serene for the first time since the emergency room visit on December 19, 2000. Plaintiff again reported to Dr. Serene that his back problems began at the time of his work-related accident in December of 1999. Plaintiff did not report an October 22, 2001 incident to Dr. Serene. Dr. Serene ordered an MRI.
11. Following his MRI, plaintiff returned to Dr. Serene on December 12, 2001. Dr. Serene noted that the MRI did not indicate any herniated disc or nerve root impingement on plaintiff's symptomatic left side. Dr. Serene further noted that plaintiff's symptoms were consistent with facet joint arthropathy and some degenerative disks. Dr. Serene recommended that plaintiff undergo three visits of physical therapy.
12. With regard to whether plaintiff's back condition is causally related to the work-related accident on December 16, 1999, Dr. Serene testified "I would say it's highly unusual for him not to have complained about his lumbar spine for a significant amount of time if the injury had occurred at the time of the initial injury." Dr. Serene was not asked to render an opinion regarding whether plaintiff's back condition is causally related to the incident on October 22, 2001.
13. Following the physical therapy, plaintiff was seen by Dr. Joseph P. Zuhosky, a physiatrist, for an independent medical evaluation on February 27, 2002. On a patient intake form for Dr. Zuhosky, plaintiff indicated that he injured his back in October 2001 while moving a large box with his left hip. However, plaintiff verbally reported to Dr. Zuhosky that his back problems began at the time of his work-related accident in December of 1999.
14. With regard to causation, Dr. Zuhosky's testified that "certainly any activity such as that described, moving a large box with his hip or not using proper body mechanics, could cause or exacerbate" a back injury. Dr. Zuhosky offered no additional testimony regarding causation on either direct or cross-examination. On cross-examination, Dr. Zuhosky stated that there was an "apparent inconsistency" in the history provided by plaintiff regarding the box incident.
15. On May 27, 2003, plaintiff saw Dr. Daniel Hamaty at Carolina Neurology Consultants for an independent medical evaluation. Plaintiff reported to Dr. Hamaty that his back problems began at the time of his work-related accident in December of 1999. Plaintiff did not report an October 22, 2001 incident to Dr. Hamaty.
16. The medical evidence of record, including the testimony of Dr. Serene and Dr. Zukosky, fails to establish that plaintiff's back condition is causally related to the incident at work on October 22, 2001. Although plaintiff has not filed a claim for a back injury resulting from the December 16, 1999 accident, the evidence of record in this matter likewise fails to establish that plaintiff's back condition is causally related to the December 16, 1999 accident.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-17(a) provides that agreements between the employee and employer are allowed so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of the Workers' Compensation Act. In the present case, pursuant to N.C. Gen. Stat. § 97-31, plaintiff's rating is required to be paid over a period of 110.4 weeks beginning October 24, 2000. Accordingly, the annuity provisions in the approved Form 21 are in violation of the Workers' Compensation Act and therefore are unenforceable.
2. For an injury to be compensable, it must be an injury by accident arising out of and in the course of the employment. N.C. Gen. Stat. §97-2(6). In cases involving "complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
3. In the present case, Dr. Serene offered no opinion regarding whether plaintiff's back condition is causally related to the October 22, 2001 incident. Dr. Zuhosky's testimony, when considered as a whole, was speculative, especially in light of the conflicting histories provided by plaintiff. Accordingly, the medical evidence of record fails to establish a causal relation between plaintiff's back condition and the incident at work on October 22, 2001. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned makes the following:
 ORDER
1. Subject to the attorney's fee approved below, for the compensable December 16, 1999 injury defendant shall pay to plaintiff permanent partial disability compensation at the rate of $560.00 per week for 110.4 weeks beginning October 24, 2000. As much of said compensation as has accrued shall be paid in a lump sum within thirty (30) days of the filing of this Opinion and Award, with defendant being entitled to a credit for all payments previously made.
2. Plaintiff's claim for workers' compensation benefits related to his back condition caused by the alleged October 22, 2001 incident is DENIED.
3. A reasonable attorney's fee in the amount of $2,000 is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Each side shall bear its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER